**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WANDA MOLYNEUX,

        Plaintiff,

vs.                                          CASE NO. 3:07-cv-458-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB").  The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.  Plaintiff requested oral argument; however, upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record.  For the reasons set out herein, **the Commissioner's decision is AFFIRMED**.

## I. Procedural History

On November 10, 2005, Plaintiff filed an application for DIB (Tr. 61-73).  Plaintiff's application was denied initially and upon reconsideration.  Pursuant to Plaintiff's request, an administrative hearing was conducted on August 31, 2006, in Jacksonville, Florida, before Administrative Law Judge Robert Droker (the "ALJ") (Tr. 253-83).  In a  decision dated December 5, 2006, the ALJ denied Plaintiff's claim by finding her able to perform work that exists in substantial numbers in the local and national economy (Tr. 22).  On April 13, 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Plaintiff now appeals under 42 U.S.C. Section 405(g).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[1] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir.

---

[1] All references made to 20 C.F.R. will be to the 2007 edition unless otherwise specified.

1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also  Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C.  §  405(g).   Substantial  evidence  is  defined  as  more  than  a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.

1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

### III. Background Facts

Plaintiff was thirty three years old at the time of the ALJ's decision and had past relevant work experience as a cashier, rental agent resident, laundry worker, and bartender (Tr. 20-22, 276).

**A. Medical Evidence**

On May 1, 2004, Plaintiff injured herself at work by lifting a heavy box (Tr. 15, 61). On May 30, 2004, Plaintiff presented to the Lake City Medical Center Emergency Room with complaints of neck and back pain (Tr. 151).  Plaintiff was seen by Richard Wright, M.D.

("Dr. Wright") who diagnosed Plaintiff with a thoracic strain (Tr. 156).  Dr. Wright referred Plaintiff to Southern Open MRI, where she underwent a cervical magnetic resonance imaging ("MRI") scan on July 15, 2004 (Tr. 173-75).  Plaintiff's cervical MRI showed a mild disc bulge at C2-3 and small central disc protrusions at C5-6 and C6-7(Tr. 173-75).

On August 12, 2004, Plaintiff presented to Steven M. Bailey, M.D. ("Dr. Bailey"), who read Plaintiff's July 15, 2004 MRI results and diagnosed Plaintiff with minor disc bulging and myofascial strain of the cervical spine (Tr. 162).  Dr. Bailey did not recommend surgery but "recommended that she stay on sedentary work duty" (Tr. 162).

On September 29, 2004, Plaintiff saw Robert N. Ulseth, M.D. ("Dr. Ulseth") of Comprehensive Pain Management of Lake City ("Comprehensive") (Tr. 212).  Dr. Ulseth noted that Plaintiff's pain level was an eight on a scale of one to ten, with ten representing the most pain (Tr. 212).  Dr. Ulseth additionally noted that Plaintiff had been prescribed Lortab (a narcotic pain medication) for pain and that Plaintiff stated the Lortab eased the pain but did not take it away entirely (Tr. 212).  Dr. Ulseth recommended Plaintiff undergo a cervical epidural injection and increased her dosage of Lortab (Tr. 212).

On January 4, 2005, Plaintiff returned to Comprehensive for a follow-up visit (Tr. 210).  Dr. Ulseth noted that Plaintiff reported decreased sleep and no change in her level of pain (Tr. 210).  Dr. Ulseth additionally noted that Plaintiff was apprehensive about undergoing an epidural injection; however, she agreed to have the procedure performed (Tr. 210).  On January 25, 2005, Plaintiff received a caudal epidural steroid injection (Tr. 209).

Approximately five months later, on May 23, 2005, Plaintiff presented to Comprehensive for a follow-up visit regarding her epidural injection (Tr. 207).  Dr. Ulseth

informed Plaintiff that she needed to be seen by a physician every thirty days because she was taking Lortab, a narcotic pain medication (Tr. 207).  Dr. Ulseth reported that Plaintiff informed him she was seeing a neurosurgeon, and that she took Advil (a non-prescription pain reliever) for pain more often than Lortab (Tr. 207).  Dr. Ulseth reduced Plaintiff's dosage of Lortab and informed her that she should continue seeing her neurosurgeon since her nerve roots were compressed (Tr. 207).

On June 23, 2005, Plaintiff was seen by YiLi Zhou, M.D. ("Dr. Zhou") at Comprehensive (Tr. 192-205).  Dr. Zhou noted that Plaintiff experienced pain of a level four on a scale of ten and that she was only able to sleep three to four hours per night (Tr. 205).  Dr. Zhou also noted that Plaintiff stated her pain seemed to stem more from her thoracic region than her cervical region (Tr. 205).  Based on the foregoing, Dr. Zhou recommended Plaintiff obtain a thoracic MRI (Tr. 206).

On June 28, 2005, Plaintiff underwent a functional capacity evaluation (Tr. 166-69), the results of which indicated Plaintiff was capable of performing Light work (Tr. 166).[2] Specifically, after undergoing various strength and range of motion testing, Plaintiff demonstrated the ability to lift up to twenty five pounds, carry thirty pounds, push and pull thirty four and forty one pounds respectively (Tr. 166).  Additionally, Plaintiff demonstrated the ability to sit and stand for continuous intervals, bend, kneel, and squat occasionally, and crawl continuously (Tr. 166).

---

[2] According to Social Security Ruling 83-10, Light work requires the ability to lift and carry twenty pounds occasionally and up to ten pounds frequently, sitting up to six hours of an eight-hour workday, and standing/walking six or more hours in an eight-hour workday.  SSR 83-10, 1983 WL31251, at *5 (S.S.A. Nov. 30, 1982).

On July 27, 2005, an MRI taken of Plaintiff's thoracic spine showed several disc protrusions of the thoracic spine (Tr. 170-71).   Specifically, the MRI showed the following: a small paracentral protrusion at Plaintiff's T5-6 level with no spinal or foraminal stenosis; a large right paracentral protrusion at Plaintiff's T6-7 level with mild spinal stenosis and no foraminal stenosis; a large central protrusion at Plaintiff's T7-8 level with moderate spinal stenosis and no foraminal stenosis; and a small central protrusion at Plaintiff's T11-12 level with no spinal or foraminal stenosis (Tr. 170-71).

On August 10, 2005 and September 30, 2005, Dr. Zhou administered epidural steroid injections to Plaintiff (Tr. 196, 202).  On October 14, 2005, Dr. Zhou reported that Plaintiff had a very good response to the epidural injections; however, Plaintiff did not tolerate the pain associated with the procedure well (Tr. 194).  In light of this, Dr. Zhou discontinued administering epidural injections to Plaintiff and refilled her prescription for Lortab (Tr. 195).

On August 15, 2005, Joseph C. Cauthen, M.D. ("Dr. Cauthen"), stated that, because of new developments in micro-surgical removal of thoracic discs, he believed Plaintiff would benefit from a transpedicular endoscopic discectomy (Tr. 185).  On February 13, 2006, Dr. Cauthen stated that Plaintiff had only moderate restriction in function (Tr. 19, 216).  Dr. Cauthen specifically noted that Plaintiff's spine had no deficits with sensory, motor, or reflex function of the extremities; her grip strength and fine dexterity were normal; she had no abnormality of gait or station; and, she had only mild loss of motion of the spine with the ability to squat and to walk on her toes and heels (Tr. 19, 216).

On February 23, 2006, a residual functional capacity ("RFC") assessment was completed by state agency medical consultant, Michelle L. Mitchell (Tr. 217-24), which

indicated  Plaintiff was capable of performing work at the Light exertional level despite her back impairments (Tr. 217-24).  On May 17, 2006, state agency medical consultant Robert Steele, completed a RFC assessment which also indicated Plaintiff was capable of performing work at the Light exertional level despite her back impairments (Tr. 225-32).

## B. The ALJ's Decision

The ALJ determined that Plaintiff had disorders of her spine and that her impairment or combination of impairments were considered severe (Tr. 18).  The ALJ found, however, that Plaintiff's medically determinable impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. part 404, subpart P, Appendix 1 (Tr. 18).

The ALJ then found Plaintiff had the RFC to perform Light work but that she was limited by the following exertional and non-exertional impairments: she needs a sit/stand option; to avoid ladders or unprotected heights; to avoid operating heavy or moving machinery; to avoid repetitive twisting of the neck, and overhead reaching; and can only occasionally bend, crouch, kneel, stoop, squat, or crawl (Tr. 18).

Based on Plaintiff's RFC, the ALJ found that Plaintiff could not perform any of her past relevant work (Tr. 20); however, after taking testimony from a vocational expert ("VE"), the ALJ determined that other jobs existed in the national economy that Plaintiff could perform (Tr. 21-22).  Specifically, the ALJ found Plaintiff could perform the jobs of ticket seller, warehouse checker, surveillance systems monitor, and order clerk (food and beverage).  *See* United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 211.467-030, 222.687-010, 379.367-010, 209.567-014 (4th Ed. 1991).

Based in part on the VE's testimony and after finding Plaintiff's testimony concerning the intensity, persistence, and limiting effect of her symptoms were not entirely credible, the

ALJ found Plaintiff was not under a disability as defined by the Social Security Act (the "Act") (Tr. 22).

## IV. Analysis

Plaintiff argues the ALJ erred by not properly discounting her subjective complaints of pain because the ALJ "failed to give adequate reasons" for discrediting Plaintiff's pain testimony (Doc. #15 at 6-7). The Court, however, is not persuaded by Plaintiff's argument. The Court finds the ALJ properly discounted Plaintiff's complaints of disabling pain by articulating several reasons for finding Plaintiff's subjective complaints not entirely credible. Moreover, the Court finds the reasons articulated by the ALJ for discrediting Plaintiff's subjective complaints of pain are supported by substantial evidence of record. Accordingly, and for the following reasons, the Commissioner's decision shall be affirmed.

When a plaintiff's credibility is at issue and the Commissioner rejects the plaintiff's allegations of pain, "[the ALJ] must articulate explicit and adequate reasons" for doing so. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988). In *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987), the Court stated that when a claimant's testimony is critical the ALJ must articulate adequate reasons for questioning the claimant's credibility. *Allen v. Sullivan*, 880 F.2d 1200, 1202-03 (11th Cir. 1989); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987). Furthermore, the reasons given for discrediting pain testimony must be based on substantial evidence. *Jones v. DHHS*, 941 F.2d 1529, 1532 (11th Cir. 1991).

In the instant case, the ALJ determined that, although Plaintiff's medically determinable back impairment could reasonably produce Plaintiff's alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effect of her

9

symptoms were not entirely credible (Tr. 19).  In support of this finding, the ALJ articulated the following reasons.

First, the ALJ noted that Plaintiff's assertions of disabling pain are in excess of the medical evidence of record, and that the medical evidence supports function consistent with a Light RFC (Tr. 19).  To illustrate, the ALJ pointed out that Plaintiff's July 14, 2004 cervical MRI findings were mild and that, although Plaintiff's July 27, 2005 thoracic MRI indicated positive findings, the evidence of record does not indicate any significant limitation of function resulting from those findings (Tr. 19).

The ALJ noted that Dr. Cauthen's most recent medical records, dated February 13, 2006, indicate Plaintiff only had a moderate restriction in function (Tr. 19, *see* 216).[3] Specifically, the ALJ referenced Dr. Cauthen's statement that Plaintiff's grip strength and fine dexterity were normal, Plaintiff's gait and station were normal, and Plaintiff only had mild loss of motion of the spine with the ability to squat and walk on her heels and toes (Tr. 216).  Dr. Cauthen additionally stated that Plaintiff's spine had no sensory, reflex, or motor deficits (Tr. 216).  The ALJ also pointed out that Dr. Cauthen's opinion that Plaintiff only has a moderate restriction in function is supported by a state agency functional capacity evaluation dated June 28, 2005 (Tr. 166-69), which indicates Plaintiff can sit, stand, walk, climb stairs, and crawl on a continual basis, and that Plaintiff has normal upper and lower extremity strength with functional gait and balance (Tr. 166-67, 169).  This evaluation also shows Plaintiff is capable of performing work at a Light exertional level (Tr. 166-67, 169).

---

[3] The Court notes that, even though Dr. Cauthen recommended surgery to Plaintiff, Dr. Cauthen nonetheless found the limitations stemming from Plaintiff's condition(s) were moderate.

10

Second, the ALJ stated that Plaintiff's own reports of record are not consistent with disabling pain.  Specifically, the ALJ noted that the record is "marked by references of reported pain levels of a 3 or 4 on a scale of 0 to 10" (Tr. 20; *see* Tr. 89A, 205, 234, 237, 246, 247) and that Plaintiff reported a decrease in pain after electronic acupuncture treatment (Tr. 20; *see* Tr. 242, 244).  Additionally, the ALJ pointed out that Plaintiff reported on February 13, 2006 an increase in her ability to sleep from three to four hours per night to a full eight hours (Tr. 20; *see* Tr. 239) and that Plaintiff reported at the August 31, 2006 hearing that her prescription pain medications eased her pain (Tr. 20, 258).

Lastly, to bolster his finding that Plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms were not entirely credible, the ALJ referenced Plaintiff's wide range of daily activities and noted that those activities were compatible with the ability to work (Tr. 20).  Specifically, the ALJ pointed out that Plaintiff testified to performing housework, driving, shopping, and socializing (Tr. 20; *see* Tr. 260-65).  Although Plaintiff stated that in order to perform some housework activities she needed to take frequent breaks and/or naps, the ALJ noted that no treating or examining source has stated this is necessary in order for Plaintiff to manage her medical condition(s) (Tr. 20).

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence).  Despite this deferential standard, it is essential that the reviewing court scrutinize the record in its entirety to determine the reasonableness of the decision reached by the ALJ.  *Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987)

11

(*internal citation omitted*).

A reviewing court must be able to determine from the ALJ's opinion whether the ALJ applied the statutory requirements and the regulations as construed by this circuit; otherwise, the reviewing court cannot effectively perform its duty. *Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987). The function of the reviewing court is to "ensure that the decision [of the ALJ] was...carefully considered in light of all the relevant facts." *Id.* at 590 (*citation omitted*).

In this case, the ALJ clearly articulated at least three reasons to support his credibility finding and the Court finds the reasons articulated by the ALJ for discounting Plaintiff's statements regarding the disabling nature of her pain are supported by substantial evidence. If an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony. *See Allen v. Sullivan*, 880 F.2d at 1203.

Plaintiff additionally argues that, since the ALJ rejected Plaintiff's testimony regarding her subjective complaints of pain, the ALJ erred by not including the impact of Plaintiff's pain in the hypothetical question posed to the VE (Doc. #15 at 8). The Court finds this argument unpersuasive as well, for the following reasons.

A hypothetical question only needs to include the claimant's functional limitations that are supported by the record. *See McSwain*, 814 F.2d at 619-20; *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986). Based on the hypothetical question posed by the ALJ, the VE identified examples of jobs that an individual with Plaintiff's vocational characteristics and RFC could perform (Tr. 21-22, 277-78). The ALJ was not required to include Plaintiff's allegations of disabling pain that he did not find credible in the

12

hypothetical question.  *See id.*; *See also Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993); *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).

The Court's independent review of the record reveals the hypothetical question presented to the VE matches the RFC determined by the ALJ (Tr. 18, 276-77).  The Court finds the ALJ's hypothetical question included all relevant vocational information that pertained to Plaintiff, including all the limitations the ALJ found in his assessment of Plaintiff's RFC (Tr. 276-77).  The ALJ was not required to include limitations that he did not find to be credible.  *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1987) (ALJ was not required to supplement grids with VE where he did not find nonexertional impairments credible).

Accordingly, the Court finds substantial evidence supports the hypothetical question posed to the VE and the ALJ's conclusion that Plaintiff could perform other work in the national and local economy.

### V. Conclusion

For the foregoing reasons, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment consistent with this Opinion and, thereafter, to close the file.  Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this  30th  day of May, 2008.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
        and *pro se* parties, if any

14